**BLAIR, Commissioner of Internal Revenue, et al. v. GRAUPNER et al.**

Circuit Court of Appeals, Third Circuit. December 3, 1928.

No. 3817.

Warren C. Graham and Richard H. Woolsey, both of Philadelphia, Pa. (Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., of counsel), for appellants.

Beidleman & Hull and Thomas D. Caldwell, all of Harrisburg, Pa., and P. J. Friel, of Philadelphia, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and KIRKPATRICK, District Judge.

WOOLLEY, Circuit Judge. The executors of Mary L. Graupner, holders of a permit to manufacture cereal beverages of lawful alcoholic content, were cited by the Prohibition Administrator for the Western District of Pennsylvania to appear before a hear-

er and show cause why the permit should not be revoked. The hearer found that the permittees had violated the terms of the permit and had not in good faith conformed to the provisions of the National Prohibition Act (27 USCA) and accordingly recommended that the permit be revoked. The Prohibition Administrator approved the findings and revoked the permit. Later he awarded a review of his decision by a reviewer who, after holding that the record justified the hearer's findings of fact, made a like recommendation. The Prohibition Administrator, acting upon the recommendation of both hearer and reviewer, then definitely revoked the permit. Thereupon the permittees by a bill in equity filed in the District Court under Section 6 of title 2 of the National Prohibition Act (27 USCA § 16) sought a review of the Administrator's decision.

■ On this review the learned trial court [(D. C.) 23 F.(2d) 947] made its own findings of fact which, opposed to those of the hearer and reviewer, were that the permittees had at all times acted in good faith; that their alleged offending conduct was an innocent mistake; and, concluding that the revocation of the permit was under the circumstances too severe a punishment, Hoell v. Mellon (D. C.) 4 F.(2d) 859, 862, and McGill v. Mellon (D. C.) 5 F.(2d) 262, 265, held that the decision of the Commissioner of Internal Revenue (acting through the Prohibition Administrator) should be reversed and the permit restored. The Commissioner took this appeal. As all this occurred after the decision in Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, yet before the decision by this court in Yudelson v. Andrews, 25 F.(2d) 80, it is evident that the learned trial court, being for the moment unmindful of the character and limit of its jurisdiction in such cases as defined in the Ma-King decision and being without whatever aid may be had from our analysis of that decision in the Yudelson Case, reviewed the case as though it were on trial de novo, found facts for itself, and accordingly rendered its decision on the merits of the controversy, that is, on a question whether or not the permit should be revoked —a purely administrative matter—when, as it is now definitely determined, its sole function was to find, under the rule in analogous cases, Silberschein v. United States, 266 U. S. 221, 225, 45 S. Ct. 69, 69 L. Ed. 256, whether upon the facts and law the decision of the Commissioner was based upon error

of law, or was wholly unsupported by the evidence or clearly arbitrary or capricious. The Ma-King Case. As no question of law was raised the sole question before the trial court was not whether the permit should be revoked but whether there was any evidence that sustained the Commissioner's exercise of discretion in revoking it.

■ The evidence, which as in most cases of this kind is conflicting, tends to show good faith or bad faith of the permittees according as one part or another part is believed. That on which the Commissioner based his decision is briefly as follows:

Two prohibition agents approached the brewery in question and seeing one of the permittees standing outside asked for admittance to the racking room. Its two doors being locked, the permittee promised to obtain the key from the brewmaster and let them in. Not being satisfied, the agents tried to enter the room through one door. Failing there, they went to the other door, whose upper part was glass. Not being admitted, they broke the glass. Seeing a number of workmen in the room they demanded admittance. One of them unlocked the door. On entering, the agents found that the racker had recently been operated and had just been flushed with water from a hose and that a great deal of beer foam was lying on the floor. In addition they found in the washroom adjoining the racking room twenty-four one-half barrels of beer which, then tested and later analyzed, showed an alcoholic content well in excess of one-half of 1 per cent. A covered truck was backed up against the nearby loading platform in the brewery yard. The permittees, to explain their conceded violation of the regulations of the Treasury Department against placing intoxicating malt liquor before dealcoholization in kegs or other portable containers (Section 703 of Regulation 60), testified that the beer in the kegs, though of high alcoholic content, was sour and had, by their order, been racked off to be drunk by the workmen, intending thereby to discourage the workmen's practice of drinking high test beer from the vats.

As the inferences arising from this evidence might validly have influenced the Commissioner's discretion in revoking the permit, we cannot say that his decision was wholly unsupported by evidence or was arbitrary or capricious. The Ma-King Case.

As the order of the District Court will be reversed, the Commissioner's revocation of the permit must stand.